UNITED STATES of America

v.

Anthony J. COSTANZO, Appellant.

No. 79–1834.

United States Court of Appeals,
Third Circuit.

Argued Jan. 17, 1980.

Decided June 5, 1980.

■■■■■■■■■■■■■

Michael H. Kessler (argued), Kendall & Kessler, Union, N. J., for appellant.

Robert J. Del Tufo, U. S. Atty., Samuel A. Alito, Jr. (argued), Asst. U. S. Atty., Newark, N. J., for appellee.

Before HUNTER, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Anthony J. Costanzo appeals from an order of the district court denying both his motion for a new trial brought pursuant to Rule 33 of the Federal Rules of Criminal Procedure and his motion under 28 U.S.C. § 2255 to vacate the federal sentence he is currently serving. Costanzo was convicted on both counts of a two count indictment for conspiracy to possess and possession of stolen United States Treasury checks in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1708.

Costanzo, citing numerous grounds warranting reversal of his conviction, claims the trial judge erred in refusing to grant an evidentiary hearing before denying the motions. We find Costanzo's most substantial claim to be the alleged error committed by the district court in refusing to conduct an evidentiary hearing on Costanzo's claim that his Sixth Amendment right to counsel was violated because Frank Paglianite, an attorney whom Costanzo consulted, furnished information to F.B.I. agents. We will review that claim first.

### Facts

Nine Treasury income tax refund checks mailed to Brooklyn payees never arrived at their destination. According to the trial testimony of Patrick Kelly, a Government informant, Costanzo and Robert Stasio met outside Kelly's office where Costanzo sought to find a purchaser for the stolen checks. Kelly was not helpful at that instance, but after being given instructions by F.B.I. agents, he directed Costanzo to F.B.I. agent Leonard Pedreira (using an alias Lenny Perrone). Costanzo met Perrone at Mid-Atlantic Air-Sea Transport, a sham trucking company staffed by undercover agents, and, in a conversation with Perrone (tape-recorded by another police officer), he offered to sell the stolen checks. Perrone delayed making a decision. Costanzo returned a few days later, and, in the course of another recorded conversation, sold the checks to Perrone and received in return $1,500 paid in thirty pre-marked $50 bills.

Costanzo's defense, consisting of his testimony, was that the Government entrapped him because it was dissatisfied with his role as a Government informant. Costanzo claimed Kelly gave him an envelope and told him it was a mortgage application which he should take to Mid-Atlantic. When he opened the envelope he was carrying and saw the checks, he pursued the sale in order to gather information about Kelly which he planned to turn over to the Government. He also said that he fabricated some of the references to criminal activity in his conversation with Perrone, and that the other incriminating statements he made at that time were based, not on his own information, but on facts told to him by Kelly. He said he did this in an attempt to "blend in" at Mid-Atlantic which he suspected was an illegal operation so he could obtain information and report to the Government. Before the trial, Costanzo's co-defendant, Robert Stasio, pled guilty to the conspiracy count as part of a plea bargain. Costanzo was found guilty after a two-week jury trial which began January 3, 1978.

After Costanzo's conviction but before sentencing, he moved for a new trial based on newly discovered evidence. The motion was denied and Costanzo was fined and sentenced to two and one-half years' imprisonment, to be followed by five years' probation. The conviction was affirmed by this court. *United States v. Costanzo*, 591 F.2d 1337 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2405, 60 L.Ed.2d 1065 (1979).

On June 6, 1979, the day Costanzo was ordered to surrender, he filed another motion for a new trial and a motion to vacate pursuant to 28 U.S.C. § 2255, claiming *inter alia*, intrusion by the Government into his attorney-client relationship. Because of the trial judge's unavailability at that time, consideration of the motions was delayed until June 25. Shortly before argument was scheduled to begin, defense counsel presented the court with additional affidavits and supporting material but the court refused to accept them for filing.[1]

In his § 2255 motion, Costanzo alleged that he employed the services of Frank Paglianite as an attorney since 1971 on various civil and criminal matters; that Paglianite attended a meeting between Costanzo and various Government officials when Costanzo decided to become a Government informant in the spring of 1975; that during the next year and a half, when Costanzo reported to the Government on various illegal activities of persons with whom he associated, he frequently consulted Paglianite; that Paglianite arranged for Costanzo's bail after his arrest on the instant charges and that Costanzo considered having Paglianite represent him until he learned that the attorney was precluded from doing so because of a conflict of interest. Costanzo further alleged that he discussed trial strategy and tactics with Paglianite during his trial and that his trial detective also discussed various aspects of the case with Paglianite. Finally, Costanzo claimed that during the course of his relationship with Paglianite, the attorney was an informant of the Federal Bureau of Investigation and related Costanzo's trial strategy to the Government.

The Government's answer to Costanzo's motion simply asserted that no claim was presented warranting relief. Significantly, the Government did not deny that it received information from Paglianite. On the contrary, it attached to its answer the affidavit of special agent Cyrus Falls which admitted that he received information from Paglianite about Costanzo from September 28, 1977 through January 13, 1978. Attached to Falls' affidavit are the F.B.I. reports summarizing the information received from Paglianite relating to Costanzo. These reports show that the F.B.I. was aware of Paglianite's relationship with Costanzo. For example, the following memorandum was prepared by the F.B.I.:

As [Paglianite] is a New Jersey attorney, he periodically is requested to represent various individuals who are under investigation by the Newark or New York Offices of the FBI.

The source has emphatically stated to SA FALLS, on each contact, that he has not and will not represent any of the individuals arrested by the Newark Office—New Jersey State Police on 9/28/77 [including Costanzo]. He stated, however, that several of those individuals were former clients and are associates and, therefore, they would periodically be in contact with him in matters relating to various financial schemes.

He was informed that any information volunteered by him would be accepted; however, no defense type strategy should ever be brought to the agent's attention.

The source emphatically stated that although he has this association with the individuals arrested he has not been retained by them as an attorney and he does not plan to allow this to happen.

The district court denied Costanzo's motion without holding an evidentiary hear-

---

1. The court rejected the material as not timely under local Rule 12C of the Rules for the United States District Court for the District of New Jersey, which requires that moving papers be served and filed at least 20 days prior to the date notified for argument. Costanzo's supplementary materials included, *inter alia*, a transcript of a taped conversation between Costanzo and Paglianite which provided support for Costanzo's claim that his relationship with Pag-

lianite was one of attorney and client. Because we hold that Costanzo's allegations of violation of his Sixth Amendment rights required an evidentiary hearing, we need not pass upon the propriety of the district court's action in refusing to consider the supplementary material. Of course, Costanzo can present the material for review by the district court when an evidentiary hearing on his claim is conducted.

ing. On appeal the Government contends that Costanzo's motion, together with court files and records, shows that Costanzo did not have an attorney-client relationship with Paglianite with respect to the present case. It denies that any information relating to Costanzo's trial strategy was conveyed to it by Paglianite.

As to the existence of an attorney-client relationship, the Government stresses that under the decision in *In re Grand Jury (Markowitz)*, 603 F.2d 469 (3d Cir. 1979), Costanzo had the burden of establishing the existence of an attorney-client relationship with Paglianite. In support of its argument that Costanzo failed to discharge that burden, the Government relies on the fact that the court records show that Paglianite never entered an appearance on Costanzo's behalf. The Government also points to Costanzo's statement in his motion that he considered using Paglianite as his trial counsel but decided not to retain him after he heard the arraignment judge advise Paglianite of a potential conflict of interest, and concludes that because Costanzo knew Paglianite could not serve as his counsel with respect to the present case he could not expect statements made to Paglianite to be the subject of an attorney-client privilege.

Secondly, the government notes that F.B.I. agent Falls avers in his affidavit that he repeatedly informed Paglianite not to relate "defense type strategy" and contends that no such protected information was related by the attorney to F.B.I. agents.

*Discussion*

Section 2255 provides in part:

*Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.*

28 U.S.C. § 2255 (emphasis added).

It is well established that where a "motion for relief under § 2255 raises an issue of fact which cannot be conclusively determined from 'the motions and the files and records of the case,' the movant is entitled to a judicial hearing at which he and his witnesses may be heard." *Del Piano v. United States*, 362 F.2d 931, 933 (3d Cir. 1966) (per curiam). *See also Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); *Lindhorst v. United States*, 585 F.2d 361 (8th Cir. 1978); *Taylor v. United States*, 487 F.2d 307 (2d Cir. 1973) (per curiam).

Review of the motion and the Government's response discloses at least two material issues of fact: (1) whether there was an attorney-client relationship between Costanzo and Paglianite which extended to the relevant time period, and (2) if so, whether Paglianite disclosed to the Government Costanzo's trial strategy told to him in confidence. We intimate no view on the validity of Costanzo's factual claim. We note, however, that if the allegations are proven, they would represent a serious incursion by the Government in Costanzo's Sixth Amendment rights.

■ The Government views too narrowly the scope of the attorney-client relationship. While it is clear that Paglianite was not representing Costanzo at trial and while it is true that "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer," *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977), communications with an attorney are privileged when they concern "legal advice of any kind . . . sought . . . from a professional legal adviser in his capacity as such," *In re Grand Jury (Markowitz)*, 603 F.2d at 474 (quoting J. Wigmore, Evidence § 2292 at 554 (1961)). The attorney-client relationship is not dependent on the payment of a fee nor upon execution of a formal contract. *Robinson v. United States*, 144 F.2d 392, 405 (6th Cir. 1944), *aff'd on other grounds*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945); *E. F. Hutton & Company v. Brown*, 305 F.Supp. 371, 388 (S.D.Texas 1969). *See* J. Wigmore, Evidence § 2303 (1961).

Costanzo has alleged a long-standing relationship with Paglianite during which he sought legal advice which was rendered by Paglianite. Costanzo specifically alleges in connection with this case: "I had serious questions as to the actions my trial attorney took or did not take and again, because of our long association, I went to Mr. Paglianite for advice and assistance. We discussed trial strategy and tactics." This allegation, if proven, might be sufficient to show that Costanzo made disclosures to Paglianite in his capacity as attorney-adviser with the expectation that they would be entitled to the same protection as if Paglianite had been his attorney.

▆ If the facts developed at an evidentiary hearing show the existence of a confidential relationship between Costanzo and Paglianite, the district court will then need to ascertain whether there was a breach of that relationship by disclosures made by Paglianite to the F.B.I. and if so, whether this constituted the type of situation warranting judicial relief. The concern with which the courts view governmental intrusion into the attorney-client relationship is reflected in the judgments of the Supreme Court in *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967) (per curiam), and *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966) (per curiam). In *O'Brien* it was admitted by the Government that it had intercepted attorney-client communications and the Solicitor General did not oppose a remand for an adversary hearing to determine the effect of the activity on the validity of the convictions. A majority of the Court, without explanation, vacated the convictions and remanded the cases for a new trial. There was a similar disposition in *Black*. Justices Harlan and Stewart, dissenting, believed the appropriate disposition was remand for a full hearing as to the circumstances and effect of these activities.

In a series of recent cases, this court has also expressed its disapproval of Government interference with the attorney-client relationship. In *United States v. Levy*, 577 F.2d 200 (3d Cir. 1978), we held that dismissal of the indictment was warranted because law enforcement officials used a Government informer to obtain confidential information concerning defense strategy, including attorney-client confidences. We said:

Where there is a knowing invasion of the attorney-client relationship and where confidential information is disclosed to the government, we think that there are overwhelming considerations militating against a standard which tests the sixth amendment violation by weighing how prejudicial to the defense the disclosure. is.

*Id.* at 208. In *United States v. Morrison*, 602 F.2d 529 (3d Cir. 1979), we also directed dismissal of the indictment under similar circumstances where the Government intentionally intruded into the attorney-client relationship. The severity of the sanction imposed in these cases reflects our view of the importance of protecting a criminal defendant's attorney-client relationship from a deliberate attempt to destroy it and to subvert the defendant's right to effective assistance of counsel and a fair trial.[2]

It may be that the circumstances of this case do not indicate any prosecutorial misconduct or intrusion into the protected attorney-client relationship. We intimate no view as to whether, even if there was an intrusion, it represented a wrongful motivated intrusion into the attorney-client relationship. *See Weatherford v. Bursey*, 429 U.S. 545, 554, 97 S.Ct. 837, 843, 51 L.Ed.2d 30 (1977). We note that the F.B.I. reports demonstrate awareness and concern by the agents not to overstep into confidential communications. *See United States v. Cooper*, 397 F.Supp. 277 (D.Neb.1975) (adopted by *United States v. Crow Dog*, 532 F.2d 1182, 1197–98 (8th Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977)). However, in the absence of full

2. See Note, *Government Interceptions of Attorney-Client Communications*, 49 N.Y.U.L.Rev. 87 (1974).

development of the facts by an evidentiary hearing, we cannot assume that no such overstep occurred simply because the Government avers that it did not.

■ Government affidavits filed in opposition to a § 2255 motion for postconviction relief are not part of the "files and records" of the case and are not conclusive against the movant. *Machibroda v. United States*, 368 U.S. at 494–95, 82 S.Ct. at 514. This principle was enunciated by the Supreme Court in *Walker v. Johnston*, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941), where the Court held that if the petitioner's allegations are "denied in the [government] affidavits filed with the return to the rule . . the denials only serve to make the issues which must be resolved by evidence taken in the usual way. They can have no other office. The witnesses who made them must be subjected to examination *ore tenus* or by deposition as are all other witnesses." *Id.* at 286–87, 61 S.Ct. at 579.

We do not suggest that the district courts must hold an evidentiary hearing on every motion for habeas corpus relief. We recognize that there any many instances where the district courts may properly deny § 2255 motions without conducting evidentiary hearings. The motion may raise no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case. Although generally an evidentiary hearing must be held to resolve factual issues falling outside the record, it is not invariably true that "a movant must always be al-

lowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense." *Machibroda v. United States*, 368 U.S. at 495, 82 S.Ct. at 514.

In this case the undisputed facts show that Paglianite had previously been Costanzo's lawyer and was in communication with him during the trial, and that during the same period Paglianite was providing information to the F.B.I. about Costanzo. We will remand this case to the district court so that the nature of the relationship and the communications can be ascertained in the course of an evidentiary hearing.[3]

### Other Claims

Costanzo also argues that the district court committed error by denying his § 2255 motion without holding an evidentiary hearing with respect to the following claims, in addition to that discussed above: denial of effective assistance of counsel before trial resulting from substandard representation by Warren Wilentz; denial of effective assistance of counsel caused by Wilentz' voluntary withdrawal from the case before trial; denial of effective assistance of trial counsel because he failed in his attempt to seek testimony of co-defendant, Robert Stasio, because he stipulated to the admissibility of a transcript of Stasio's guilty plea, and because he did not introduce certain out-of-court statements;[4] vio-

---

**3.** Even if an evidentiary hearing discloses that Costanzo's allegations are in fact true, we do not foreclose the district court from making an initial determination as to the appropriate sanction. In *United States v. Levy*, 577 F.2d 200, 207 (3d Cir. 1978), we stated that "the presence of an informer in the defense camp does not alone require such a dismissal." We referred to our earlier decision in *United States v. Rispo*, 460 F.2d 965 (3d Cir. 1972), where, under circumstances which did not involve actual disclosure of attorney-client confidences by the informer to the prosecution, we held that a new trial was the remedy.

**4.** Costanzo's reply brief contains the following sentence: "Mr. Seffern [trial counsel] . . . was a single practitioner with no personal knowledge of the witnesses, procedures applicable to the courts of the District of New Jersey, *suspended from practice in his home state* who began the trial fishing for F.B.I. time sheets which did not exist." Reply Brief for Appellant at 6 (emphasis added). In his written motion under Section 2255, Costanzo did not raise the allegation that his trial counsel was suspended from practice in his home state of New York as a basis for his claim of ineffective assistance of counsel although there was some discussion of Seffern's status during the oral presentation of Costanzo's § 2255 motion.

lation by the Government of a promise of testimonial immunity made to Costanzo when it introduced certain evidence against him; failure of the Government to comply with the Jencks Act, 18 U.S.C. § 3500, because it did not supply certain material to Costanzo; violation of the Government's statutory obligation to maintain accurate records, resulting in Costanzo's inability to obtain certain exculpatory information; false testimony given by Patrick Kelly, a Government witness, when, in listing some of the terms of his plea bargain, he failed to mention that the Government had agreed not to prosecute him for other offenses then under investigation; failure of the Government to produce exculpatory evidence, thus violating its obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); materially false testimony at trial given by Government witnesses; and denial of Costanzo's due process right to a fair trial as a result of the cumulative effect of the aforementioned errors. Costanzo makes the additional claim that the trial judge behaved improperly in examining court records in this case to determine whether Frank Paglianite entered the case on behalf of Costanzo.

Costanzo also argues the district court erred in denying his motion for a new trial without conducting an evidentiary hearing with respect to Costanzo's allegations as to the discovery of new evidence, i. e., a tape recording of a conversation held on April 5, 1976, the transcript of Kelly's guilty plea, and the testimony of Charles Coveney and Charles Nuara.

After careful consideration of each of the above claims, we find them to be without merit. Accordingly, we will remand for an evidentiary hearing as to appellant's claim of a Sixth Amendment violation and in all other respects we will affirm the judgment of the district court.

In the trial court, counsel stated that Seffern was suspended from the New York state courts for commingling of funds, but was not suspended from practice in the federal courts of New York because no certified copy of the New York suspension had been filed with the federal courts. Appendix 1445–46a. The trial court stated that "Seffern represented himself to be a member of the bar of good standing in New York in the Federal Court" and was accepted as such, and then stated "As far as I know that was true." Appendix 1455a. At the oral argument on appeal, Costanzo's counsel stated a copy of Seffern's suspension had been filed with the Eastern District of New York but not the Southern District of New York.

Since Costanzo has not raised this issue on appeal except by the oblique reference in the reply brief and in view of the absence of specific factual findings by the court as to Seffern's status, we will not reach the issue on this appeal. However, had it been appropriately raised and if it were proven that at the time Seffern represented Costanzo in the trial in the United States District Court in New Jersey, Seffern had been suspended from practice in his home state of New York, we would view these facts with grave concern. See *United States v. DeFalco*, Nos. 78–2166 and 78–2209 (3d Cir. Dec. 28, 1979) (en banc) (Slip Op. at 24–27, Adams, J., dissenting). Under these circumstances, nothing herein should be construed to preclude Costanzo from raising in a timely fashion a claim of ineffective assistance of trial counsel based on the suspension of Seffern from practice in New York, so that this claim can be considered by the district court.

If the claim is appropriately raised, it is the district court which should, in the first instance, decide the application of Rule 4C of the General Rules of the District of New Jersey ("Any member in good standing of the bar of any court of the United States or of the highest court of any state . . . may in the discretion of the court, on motion, be permitted to appear and participate in a particular case . . . ..") to a situation where counsel has been suspended in the state courts but not in every federal court. The court would also be required to decide whether representation by a privately selected attorney suspended in the state court deprives a defendant of effective assistance of counsel.