**Gloria HELMAN, individually and, as a representative of the estate of Sandra Mendelson, Plaintiff,**

v.

**MURRY'S STEAKS, INC., Murry Mendelson, Ira Mendelson and the Rymer Company, Defendants.**

**Civ. A. No. 86–469 LON.**

United States District Court,
D. Delaware.

Jan. 17, 1990.

Wayne J. Carey, James L. Holzman, Michael Hanrahan, Philip B. Obbard of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (Glen DeValerio (argued), Margaret G. Dobies of Berman, DeValerio & Pease, Boston, Mass., Norman Burwen, Fort Lauderdale, Fla., of counsel, for plaintiff.

Michael D. Goldman of Potter Anderson & Corroon, Wilmington, Del., for defendants. Herbert E. Milstein (argued), Andrew N. Friedman of Cohen, Milstein & Hausfeld, Washington, D.C., for defendants Murry's Steaks, Inc. and The Rymer Co.

Burton A. Schwalb (argued), David N. Yellen, Steven Sarfatti of Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for defendants Murry Mendelson and Ira Mendelson.

## OPINION

LONGOBARDI, Chief Judge.

The Plaintiff Gloria Helman ("Helman") commenced this action individually and as a personal representative of the estate of her deceased mother, Sandra J. Mendelson, seeking damages against the Defendants for violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; and various common and state law violations. The Second Amended Complaint alleges that the individual Defendants and the Defendant Murry's Steaks, Inc. ("MSI") conspired with and entered into a course of conduct with the Defendant Rymer designed to defraud Plaintiff and her mother by withholding material information regarding the business of MSI, its financial condition and its future value through a proposed merger with Rymer. The fraud allegedly caused the Plaintiff and her mother to sell their minority interest in MSI for less than its true value.

Presently before the Court in this case is Defendants' motion to compel production of certain documents and deposition testimony withheld by the Plaintiff on the basis of attorney/client privilege.

## I. BACKGROUND

Until it was acquired on October 30, 1985, MSI was a family owned and operated company founded by the late Alfred G. Mendelson, father of Defendant Murry Mendelson and the late Sandra Mendelson. Following the death of Alfred G. Mendelson in 1972, controlling ownership of MSI was vested in his surviving spouse, Ida Mendelson, and in the Alfred G. Mendelson Trust (the "Mendelson Trust").

Sandra Mendelson, who died in January, 1985, was Alfred G. Mendelson's daughter and the mother of the Plaintiff, Gloria Helman. Prior to the events complained of in this action, Sandra Mendelson owned a substantial interest in MSI and until 1979 was also employed by the company as both a vice-president and an assistant secretary. Plaintiff Gloria Helman, prior to the events complaint of in this action, owned 100 shares of non-voting common stock of MSI and was also the beneficiary and trustee of the Sandra J. Mendelson Living Trust established by her late mother.

In December, 1977, MSI underwent a recapitalization in which new classes of voting stock, non-voting stock and preferred stock were created. As a condition to this recapitalization plan, Sandra Mendelson and each of the other major MSI shareholders executed a Stock Redemption Agreement with MSI which provided that if any of them wished to sell their MSI stock in the future, then MSI would have the option to acquire the stock at a price based upon MSI's "book value" for the preceding fiscal year.

Sometime in the summer of 1980, Sandra Mendelson approached her brother, Murry Mendelson, then Chief Executive Officer of MSI, and expressed a desire to retire from MSI and demanded that MSI buy her MSI stock and the MSI stock held by her daughter, Plaintiff Gloria Helman. Sandra Men-

delson hired attorney Saul Schwartzbach to conduct negotiations with MSI to determine the price at which her shares were to be repurchased. Melvin Sykes, another attorney, was also consulted by Sandra Mendelson with respect to these negotiations.

The result of these negotiations was a Letter of Intent setting forth the complete details of the stock redemption by MSI. The Letter of Intent was signed by Sandra Mendelson in February of 1982 and reduced to a Definitive Agreement which became effective on November 30, 1982. The Definitive Agreement provided for two separate closings. Sandra Mendelson and Gloria Helman were represented by John A. Cogar at the first closing on February 28, 1983, during which MSI purchased the entire ownership interests of Sandra Mendelson in MSI for approximately $1,600,000 exclusive of $600,000 in deferred compensation and pension payments. Helman received $18,000 for her MSI shares. Under the Definitive Agreement, the second closing, which was to occur either sixty days after the death of Ida Mendelson or at MSI's option at an earlier date, would involve the distribution and transfer of Sandra Mendelson's, her unborn issue's and Gloria Helman's contingent remainder interest in the Mendelson Trust.

Subsequent to the first closing but prior to the second closing, attorney John Cogar and his law partner, Jeffrey Radowich, provided Sandra Mendelson with estate planning services. Sandra Mendelson also sought estate planning services from her Florida attorney, A.J. Musselman, Jr.

Under the terms of the Definitive Agreement, MSI called for the second closing in July, 1985. Plaintiff Helman consulted with attorneys John Cogar, Maurice Rhinehardt (law partner to A.J. Musselman) and Steven Fine in conjunction with the second closing.[1] After these consultations, the Plaintiff refused to proceed with the closing in light of the parties different opinions as to the terms of the Definitive Agreement. Thereafter, the Plaintiff and MSI entered into a new agreement which changed the amount of consideration MSI would pay Gloria Helman at the completion of the second closing. The new agreement provided that Helman would receive $665,000 in cash and a note for an additional $665,000 in exchange for her 25% interest in the Mendelson Trust. The Plaintiff contends that the Defendants carefully concealed and failed to disclose that Rymer had offered to purchase MSI prior to the renegotiation of the terms of the Definitive Agreement.

## II. DISCOVERY HISTORY

During the course of the lawsuit, depositions have been taken of all of the attorneys that represented Sandra Mendelson and Gloria Helman in connection with the first and second closing. In all but two of these depositions, the Plaintiff has not asserted the attorney/client privilege.[2]

Plaintiff asserted the attorney/client privilege during the deposition of John A. Cogar and refused to allow the deponent to testify about six conversations, three of which were held during the fall of 1985, prior to the second closing and the remainder were held at some point after the institution of the present lawsuit. Also withheld as privileged were the notes made by Cogar in conjunction with these conversations.

Plaintiff also asserted the privilege with respect to documents requested in conjunction with the deposition of attorney Rhinehardt. Originally, Plaintiff's counsel arranged for Defendants' counsel to physically inspect the documents and then to designate certain of these documents for copying. Defense counsel did so and subsequently made a request for copies of certain documents. Several of the documents designated for copying were withheld from

---

1. Sandra Mendelson died in January, 1985.

2. Plaintiff asserted the attorney/client privilege during her own deposition with respect to her conversation with attorney, Steven Fine before the second closing. In as much as the Plaintiff in her reply brief stated that she has agreed to testify about her September 24, 1985, conversation with Steven Fine, Docket Item ("D.I.") 65 at 2, Defendants' motion to compel production of that testimony is moot.

Defendants on the basis of attorney/client privilege.

Defendants have now moved the Court to compel the production of the documents and deposition testimony withheld by the Plaintiff. With respect to the deposition testimony of John A. Cogar, Defendants assert that no attorney/client relationship existed between the Plaintiff and Cogar at the time the communications took place. Alternatively, Defendants argue that even if an attorney/client relationship existed, any privilege attaching to the conversations had been waived. With respect to the Rhinehardt documents, Defendants claim that the access they had been given to physically inspect the documents waived any privilege that existed.

### III. ATTORNEY/CLIENT PRIVILEGE

#### A. *Deposition Testimony of John A. Cogar*

■ Defendants' first claim with respect to the deposition testimony of John Cogar withheld by Plaintiff on the basis of attorney/client privilege is that there existed no attorney/client relationship between Cogar and the Plaintiff at the time communications took place.

John Cogar began his legal representation of Sandra Mendelson and Gloria Helman in December of 1982. Docket Item ("D.I.") 65 at 5. He represented them at the first closing on February 28, 1983. *Id.* at 17. Thereafter, Cogar performed estate planning services for the Plaintiff and her mother until the summer or fall of 1984 when he ceased representing them. D.I. 62, Exhibit ("Ex.") A at 32. All of the communications in question took place after the fall of 1984 and the Plaintiff was never billed for them. *Id.* at 40. Both the Plaintiff and Cogar testified at their respective depositions that the purpose of these communications was to obtain legal advice with respect to the second closing and possible litigation arising from the entire transaction. *Id.*, Ex. A at 50–51, Ex. C at 155.

The attorney/client privilege exists to encourage full and frank communications between attorneys and their clients. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The ability of clients to confer confidentially with attorneys enhances the caliber of legal representation an attorney can offer a client. *Valente v. Pepsico Inc.*, 68 F.R.D. 361, 367 (D.Del.1975). Yet not all communications between an attorney and an individual qualify for the protection of the attorney/client privilege "simply because [they are] made by or to a person who happens to be a lawyer." *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977), *quoted in United States v. Costanzo*, 625 F.2d 465, 468 (3rd Cir. 1980), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). In order to qualify for the protection, the Third Circuit requires that a communication adhere to the requirements annunciated in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege had been (a) claimed and (b) not waived by the client.

Defendants' first claim is that the communications in question fail to satisfy the first requirement in that the Plaintiff was not, nor sought to become a client. Defendants rely on *United States v. Wilson*, 798 F.2d 509 (1st Cir.1986) for the proposition that the Plaintiff was not a client of Cogar's. In *Wilson*, the court held that where the defendant had not stated his desire to obtain legal services from the attorney, and the attorney testified that he did not give any legal advice to the defendant, and the defendant was not billed by

the attorney, a memo written by the defendant to the attorney was not protected by the attorney/client privilege because the defendant was not, nor sought to become a client. *Id.* at 513.

Although in the present case the Plaintiff was not billed for the services rendered by Cogar, it is evident from the deposition testimony of both the Plaintiff and Cogar that the Plaintiff was seeking legal advice. Thus, the present case is distinguishable from *Wilson.*

Further, the Third Circuit has stated that unless the communication is in furtherance of some crime or fraud or the privilege has been waived, "communications with an attorney are privileged when they concern 'legal advice of any kind ... sought ... from a professional legal advisor in his capacity as such.'" *Matter of Grand Jury Empanelled Feb. 14, 1978,* 603 F.2d 469, 474 (3rd Cir.1979) (quoting J. Wigmore, Evidence § 2292 at 554 (1961)), *quoted in United States v. Costanzo,* 625 F.2d at 468. The essence of whether one communicating with an attorney is a "client" depends upon whether that person is seeking legal advice not whether there is a payment of a fee or an execution of a formal contract. *Robinson v. United States,* 144 F.2d 392, 405 (6th Cir.1944), *aff'd on other grounds,* 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945), *cited in United States v. Costanzo,* 625 F.2d at 468.

In the present case, there is no doubt that the Plaintiff was seeking legal advice from Cogar during the communications in question. Therefore, an attorney/client relationship existed between Cogar and the Plaintiff at the time of the communications thereby rendering them privileged.

■ Defendants claim, however, that despite the existence of an attorney/client relationship between the Plaintiff and Cogar at the time of the communications, any privilege that attached to the communications has been waived by the Plaintiff. Defendants assert that because the Plaintiff had allowed all attorneys who represented Sandra Mendelson and the Plaintiff, other than Cogar, to testify regarding all of the services they performed with respect the

first and second closing, Plaintiff has universally waived the attorney/client privilege with respect to this subject matter.

The general rule is that voluntary disclosure of privileged attorney/client communication constitutes waiver of the privilege as to all other such communications on the same subject. *Weil v. Investment/Indicators Research & Management,* 647 F.2d 18, 23–25 (9th Cir.1981); *Smith v. Alyeska Pipeline Service Co.,* 538 F.Supp. 977, 979 (D.Del.1982).

In the present case, it is clear that other attorneys representing the Plaintiff were permitted to testify concerning the second closing. Therefore, to the extent that any of the communications in question relate to legal advice regarding the second closing, the privilege has been waived and the Defendants are entitled to depose Cogar on those subjects. Further, Defendants are also entitled to all notes prepared by Cogar relating to the same subject matter.

■ Defendants further assert that they are entitled to depose Cogar with respect to advice the Plaintiff sought regarding potential litigation arising from the entire transaction. They argue that when the Plaintiff testified at her deposition about the advice she received from Cogar concerning the second closing without asserting the privilege, she waived the privilege with respect all other subjects addressed in the discussion.

Counsel for the Defendants cite no authority for this proposition. As stated above, in such instances, the law provides that the privilege is waived with respect to communications relating to the *same* subject matter. *Smith v. Alyeska Pipeline Service Co.,* 538 F.Supp. at 979.

Here, the communications sought by the Defendants relate to potential litigation arising out the entire transaction. This is not the same subject matter as legal advice concerning the second closing. No other attorney, nor the Plaintiff, nor Cogar himself has testified on the topic of potential litigation arising from the entire transaction, thus the privilege has not been waived in this regard. Therefore, the Defendants

are not entitled to depose Cogar with respect to this subject nor are they entitled to any of his notes which may be relative to that subject matter.

## B. *The Rhinehardt Documents*

■ Maurice Rhinehardt counseled Sandra Mendelson regarding her estate. He provided those services from soon after the first closing until her death in 1985. At Rhinehardt's deposition in the present case, the Defendants made a request to review documents related to Rhinehardt's estate planning services for Sandra Mendelson. Questioning the relevancy of such documents, Plaintiff's counsel agreed to allow defense counsel to review the documents and to identify those that it desired. After such designation, Plaintiff's counsel would then address the relevancy of the requested documents. While the documents were being reviewed it became apparent that some privileged documents were intermingled with the estate planning documents. Plaintiff's counsel interrupted the review and removed the purportedly privileged documents. After the review, defense counsel made a request for the documents and Plaintiff's counsel withheld them on the basis of attorney/client privilege.

Defendants assert that inadvertent disclosure of information protected by the attorney/client privilege waives the privilege with respect to the information disclosed unless reasonable precautions were taken to prevent such disclosure and measures were immediately taken by the proponent of the privilege to rectify the disclosure. *Parkway Gallery v. Kittinger/Pennsylvania H. Group*, 116 F.R.D. 46, 50 (M.D.N.C. 1987). The rationale behind this position begins with the premise that the confidentiality of a privileged communication should be jealously guarded. It should be of paramount importance to the holder of the privilege to insure the confidentiality of the privileged communication. Where the proponent fails to adequately safeguard the confidentiality of the communication thereby waiving the privilege, the court should not be expected to resurrect it. *In re Sealed Case*, 877 F.2d 976, 978, Silberman, J. (D.C.Cir.1989); *Hartford Fire Ins. Co. v.*

*Garvey*, 109 F.R.D. 323, 330 (N.D.Cal. 1985).

The better reasoned rule, however, provides that inadvertent disclosure does not waive the privilege. *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951 (N.D.Ill. 1982) ("... if we are serious about the attorney-client privilege and its relation to the *client's* welfare, we should require more than ... negligence by *counsel* before the client can be deemed to have given up the privilege") (emphasis in original). The holder of the privilege is the client. It would fly in the face of the essential purpose of the attorney/client privilege to allow a truly inadvertent disclosure of a privileged communication by counsel to waive the client's privilege. *See also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y.1985); *Kansas–Nebraska Natural Gas v. Marathon Oil Co.*, 109 F.R.D. 12 (D.Neb.1985); *Dunn Chemical Co. v. Sybron Corp.*, 1975–2 Trade Cas. ¶ 60,561 at 67,463 (S.D.N.Y. 1975).

In this situation, Plaintiff's counsel was not in control of the documents that were disclosed when they were disclosed. They took all precautions against disclosure that could reasonably have been expected. Upon discovery of the inadvertent disclosure counsel took immediate precautions to rectify the situation. Plaintiff's counsel can hardly be deemed to have acted with "more than negligence." Therefore, the inadvertent disclosure of the Rhinehardt documents did not waive their protection by the attorney/client privilege.

## IV. REASONABLE EXPENSES

Defendants have moved under Rule 37(a)(4) of the Federal Rules of Civil Procedure for the reasonable expenses associated with the motion to compel discovery. Rule 37(a)(4) provides that the court shall award such expenses unless opposition to the motion was substantially justified. Fed.R.Civ.P. 37(a)(4). In light of this Court's discussion and subsequent ruling, the Court finds that opposition to the Motion to Compel was substantially justified,

therefore, reasonable expenses will not be awarded.