BERG ELECTRONICS, INC., Plaintiff,

v.

MOLEX, INCORPORATED, Defendant.

Civ. A. No. 94–470–RRM.

United States District Court,
D. Delaware.

Feb. 8, 1995.

Donald F. Parsons, Jr. & Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Norman L. Norris, John P. Donohue, Jr., Frederic A. Tecce, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, PA, for plaintiff.

Ben T. Castle, Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Dennis R. Schlemmer, John E. Rosenquist, John W. Kozak, Paul J. Korniczky, Leydig, Vot & Mayer, Chicago, IL, for defendant.

## OPINION

McKELVIE, District Judge.

In this patent case, Molex, Incorporated contends it inadvertently produced during discovery copies of documents that would otherwise be protected from disclosure by the attorney-client privilege. It has moved for an order directing Berg Electronics, Inc. to return the documents. Berg has declined to return the documents, contending the disclosure is a waiver of the privilege and that the vast majority of the documents produced are not subject to the protection of the privilege in any event.

This is the court's decision on the motion.

*FACTUAL BACKGROUND*

In presenting the motion, Molex's trial counsel reported that during the process of gathering and copying approximately 15,000 documents to be produced to Berg, copies of documents to be withheld as privileged or not relevant were marked with a yellow tab. However, somewhere in the process from tabbing, to copying, to producing, the tabs fell off or were removed. As a result, these documents were copied and the copies were delivered to Berg's counsel. Molex's counsel learned of this problem when certain of the documents were identified and used in a deposition. The next day Molex's counsel asked Berg's counsel to return the documents. Berg has declined to return the documents and contends that the vast majority of them are not privileged.

Molex has moved for an order directing Berg's counsel to return the documents that were inadvertently produced and striking the testimony taken when the documents surfaced.

*DISCUSSION*

The Supreme Court has recognized that the privilege forbidding the discovery and admission of evidence relating to communications between an attorney and a client is intended to ensure the client remains free from apprehension that consultations with a

legal advisor will be disclosed. *See Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888). If we intend to serve the interests of justice by encouraging clients to consult with counsel free from the apprehension of disclosure, then courts must work to apply the privilege in ways that are predictable and certain. *In re von Bulow*, 828 F.2d 94, 100 (2d Cir.1987). An uncertain privilege is a privilege that is little better than no privilege at all. *Id.; Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir.1994).

Courts have followed three general approaches in deciding whether the inadvertent production of a document that contains a confidential attorney-client communication waives the privilege. Some courts have found that inadvertently producing the document does waive the privilege. *See, e.g., International Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449–50 (D.Mass.1988) (holding that the production of mislabeled documents or ones from which the label was mistakenly removed waived the privilege); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1162 (D.S.C.1974) (finding the privilege waived as to a letter inadvertently produced to defendant by plaintiff pursuant to a consent order). These courts follow a traditional view expressed by Wigmore that any disclosure of a privileged communication is a waiver, no matter what precautions were taken to avoid it:

> All *involuntary* disclosures, in particular, through the loss or theft of documents from the attorney's possession, are not protected by the privilege, on the principle ... that, since the law has granted secrecy so far as its own process goes, it leaves to the client and attorney to take measures of caution sufficient to prevent being overheard by third persons. The risk of insufficient precautions is upon the client. This principle applies equally to documents.

8 John H. Wigmore, *Evidence*, § 2325, at 633 (McNaughton rev. 1961); *see also* 26A Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5726, at 543 n. 75 ("If the holder delivers documents to a third person, he could claim this was 'inadvertent' only on the supposition that

he did not bother to look at them before turning them over; but if he cares so little about his secrets, it is difficult to see why courts should come to his rescue when he realizes he should have been more careful.").

A disadvantage of this traditional approach is that it divests the client of the opportunity to protect communications he or she intended to maintain confidential. The privilege for confidential communications can be lost if papers are in a car that is stolen, a briefcase that is lost, a letter that is misdelivered, or in a facsimile that is missent. This approach takes from the client the ability to control when his or her privilege is waived, and is inconsistent with the Supreme Court's admonition that courts should apply the privilege to ensure a client remains free from apprehension that consultations with a legal advisor will be disclosed.

Other courts have looked to the general circumstances surrounding the disclosure of the documents to determine whether finding a waiver would be fair and reasonable. Those courts consider factors such as the reasonableness of the precautions taken to prevent inadvertent disclosure, the number of inadvertent disclosures, the extent of the disclosure, measures taken to rectify the disclosure, any delay in taking those measures, and whether the overriding interests of justice would or would not be served by relieving a party of its error. *See, e.g., F.D.I.C. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 482–84 (E.D.Va.1991) (balancing the above factors and finding the privilege waived); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 132 F.R.D. 204, 209 (N.D.Ind.1990) (finding the privilege waived due to counsel's failure to take precautions to prevent disclosure and to rectify error); *Bud Antle, Inc. v. Grow–Tech, Inc.*, 131 F.R.D. 179, 183–84 (N.D.Cal.1990) (finding the privilege waived based on the above factors, especially the "overriding issue of fairness"); *see generally* 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure*, § 2016.2 (discussing the above factors).

This balancing approach results in an uncertain privilege. That is, the protection of the privilege will depend on courts reviewing

and making judgments on a broad array of facts, such as what procedures were put in place to identify and copy the documents, whether there was a written description of the procedure to be followed, and what were the time pressures present in the production. In addition, courts might ask such questions as was the person doing the copying given specific instructions not to copy the privileged documents, who reviewed the photocopying, were five hundred pages of documents copied or five thousand, and is two days, three days, or ten days too long a delay in taking steps to rectify the error?

This approach also has the disadvantage of inviting parties to litigate almost every dispute where there is a claim of an inadvertent waiver, as it suggests the decision on whether the protection of the privilege has been lost will be made on a case by case basis and will depend on a particular court's judgment on whether it would be reasonable to find a waiver in the context of the facts and circumstances of that case.

■ Still other courts have found that the mere inadvertent production of documents by counsel does not waive the privilege. *See Helman v. Murry's Steaks, Inc.,* 728 F.Supp. 1099, 1104 (D.Del.1990); *Fidelity Bank, N.A. v. Bass,* Civ.A. No. 88–5257, 1989 WL 9354 (E.D.Pa. Feb. 8, 1989). Thus, as one court concluded, "if we are serious about the attorney-client privilege and the *client's* welfare, we should require more than ... negligence by *counsel* before the client can be deemed to have given up the privilege." *Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 954–55 (N.D.Ill.1982) (emphasis added). These cases look to the factual basis for the claim the disclosure was inadvertent to determine whether the client intended to disclose the document or communication, whether the disclosure was inadvertent, or whether the disclosure was unintentional but was so negligent or reckless that the court should deem it intentional. *See Helman,* 728 F.Supp. at 1104; *Mendenhall,* 531 F.Supp. at 955; *see also Marine Midland,* 138 F.R.D. at 482 ("Inadvertent disclosures are, by definition, unintentional acts, but disclosures may occur under circumstances of such extreme or

gross negligence as to warrant deeming the act of disclosure to be intentional.").

The court finds the rule of law established by these cases that look to intent best serves the interests of the attorney-client privilege, as it protects the client from the apprehension that consultations with their legal advisors will be inadvertently disclosed and applies the privilege in a way that is predictable and certain.

■ In this case, Molex has identified a sufficient factual basis for the court to find it inadvertently produced these documents. That is, it has shown (and Berg has not disputed) that Molex's counsel identified the documents to be withheld, marked those documents, and someone at counsel's law firm nevertheless copied and produced them. It is clear that Molex and its counsel did not intend to produce these documents; on the contrary, they intended not to produce them, and the documents were produced by mistake.

As the court has found the production was inadvertent, it concludes Molex has not waived the privilege that protects these documents from disclosure in discovery. The court will enter an Order directing Berg to return to Molex all copies of the documents Molex has identified as inadvertently produced. With regard to each document produced and returned, Molex will prepare a log identifying the document and the basis for its claim the document is protected from discovery by the attorney-client privilege.

To the extent Molex also inadvertently produced documents it contends are not relevant, Molex shall prepare a log identifying those documents. To the extent the parties are unable to resolve Berg's right to obtain copies of those documents in discovery, Berg may file an application for appropriate relief.