MARIE M. TOMASSO
                        District Director (Acting)

**INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL UNION
1332, et al., Plaintiffs,**

v.

**INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, et al., Defendants.**

Civ. A. No. 95–CV–6832.

United States District Court,
E.D. Pennsylvania.

Dec. 15, 1995.

Charles T. Joyce, Spear, Wilderman, Borish, Endy, Browning and Spear, Philadelphia, for Plaintiffs.

Markowitz & Richman, Paula R. Markowitz, Jonathan Walters, Philadelphia, Freedman & Lorry, Stanley Gruber, Philadelphia, Gleason & Mathews, Ernest L. Mathews, New York City, for Defendants.

*MEMORANDUM*

ANITA B. BRODY, District Judge.

There are three issues before this court: (1) whether defense counsel have conflicts of interest which violate the Pennsylvania Rules of Professional Conduct; (2) if so, whether defense counsel may remedy the conflicts by withdrawing from other cases; and (3) whether defense counsel must withdraw from this case. For the reasons explained below, defense counsel have conflicts of interest which violate Rules 1.7 and 1.9 of the Pennsylvania Rules of Professional Conduct. Counsel may not withdraw from other cases, and are ordered to withdraw from this case.[1]

## I. BACKGROUND

On September 25, 1995, the International Longshoremen's Association ("ILA") revoked the charter of its Local 1332. In response, the local and its president Thomas Blackwell filed this suit against the ILA and its officers and moved for a preliminary injunction to compel the reinstatement of Local 1332's charter.

Plaintiffs are represented by Charles Joyce, Esq. of Spear, Wilderman, Borish, Endy, Spear & Runckel. Defendants are represented by New York counsel Ernest Mathews, Esq. and Kevin Marrinan, Esq. of Gleason & Mathews, P.C., who are appearing *pro hac vice*. In addition, defendants are represented by local counsel Stanley Gruber, Esq. of Freedman & Lorry, P.C. All counsel appearing before this court must comply with the Pennsylvania Rules of Professional Conduct, including the provisions prohibiting certain conflicts of interest. *See* E.D.Pa.Local R.Civ.P. 83.6, Part IV.B (attorneys admitted to practice in the Eastern District of Pennsylvania must follow the Pennsylvania Rules of Professional Conduct), Local R.Civ.P. 83.6, Part VIII (counsel admitted to this court *pro hac vice* are subject to the disciplinary rules of this court).

Early during the hearing on the motion for a preliminary injunction, Blackwell mentioned in his testimony that Gruber had once represented Local 1332 in an unrelated matter. The court inquired about a possible conflict of interest, but plaintiffs' counsel responded that for reasons he considered valid he had no objections to Gruber's participation in this lawsuit.

As the proceedings continued, two additional potential conflicts of interest were brought to the court's attention: (1) Blackwell was once represented by Gruber's partner in a matter which is related to the instant case; and (2) Local 1332 is currently represented in another case by Mathews, Marrinan and Gruber.

Over defense counsel's opposition, plaintiffs' counsel objected to the continued participation of Gruber, Mathews and Marrinan as violating the Pennsylvania Rules of Professional Conduct. The court has the power and the obligation to proscribe violations of the Rules. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir.1984) ("One of the inherent powers of any federal court is the ... discipline of attorneys practicing before it."), *cert. denied sub nom. Cochrane & Bresnahan v. Plaintiff Class Representatives*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). The potential conflicts of interest are the issue currently before the court.[2]

## II. DISCUSSION

Attorneys appearing before this court must comply with the Pennsylvania Rules of Professional Conduct ("RPC"). *See* E.D.Pa.Local R.Civ.P. 83.6, Part IV.B, VIII. *But see Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992) (holding that the RPC are not a basis for civil liability). Counsel for the defen-

---

1. The order implementing this decision was issued from the bench on November 27, 1995. This memorandum is an explanation of that oral order as well as a response to defendants' motion for reconsideration of that order. "Defense counsel" refers only to those counsel of record as of November 27, 1995.

2. The court's investigation has revealed that other conflicts, not disclosed at the hearing, may also exist. For example, Blackwell is represented by Gruber's partner in *PMTA–ILA Container v. Rose*, No. 94–CV–5635 (E.D.Pa.), a matter presently before the Eastern District of Pennsylvania.

dants have violated the RPC due to their conflicts of interest.

## A. The Conflicts of Interest Violate the Pennsylvania Rules of Professional Conduct

Defense counsel have conflicts of interest which violate the RPC. The first is Gruber's conflict with his firm's former client Blackwell. The second involves Mathews, Marrinan and Gruber and their current representation of Local 1332 in another matter.

### 1. The Former Representation of Blackwell

Blackwell was a trustee on the Philadelphia Marine Trade Association ("PMTA")–ILA Pension Fund during its payment negotiations with Local 1332.[3] Gruber's partner was counsel for the trustees of the fund at the time. Blackwell is therefore a former client of Gruber's firm,[4] and Gruber has a potential conflict of interest. *See* RPC Rule 1.10(a) ("[W]hen lawyers are associated in a law firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so.").

■ The RPC strictly regulate conflicts of interest with former clients:

A lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in ... a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation.

RPC Rule 1.9(a). Gruber's conflict violates RPC Rule 1.9(a) because: (a) this case is substantially related to his partner's earlier representation of Blackwell, (b) defendants'

interests are materially adverse to Blackwell's interests, and (c) Blackwell did not knowingly consent to Gruber's representation in this case.

### a. The Two Matters Are Substantially Related

■ Gruber's partner represented the trustees of the PMTA–ILA Pension and Welfare Funds during their payment negotiations with Local 1332. Defendants are now alleging that plaintiffs have "unclean hands" because those negotiations resulted in an illegal payment arrangement. (Defs.' Mem. Opp'n Pls.' Mot.Prelim.Inj. at 37.) Two matters are "substantially related" under RPC Rule 1.9(a) when an attorney might have acquired confidential information as counsel in one matter which is also relevant to the other matter. *Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 544 n. 12 (3d Cir.1977); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1204 (E.D.Pa. 1992). Gruber's partner was involved in negotiations on Blackwell's behalf, and the legality of those negotiations is now at issue. It is therefore likely that Gruber's partner learned confidential information about Blackwell which is relevant to this case.

### b. The Clients Have Materially Adverse Interests

The second prong of RPC Rule 1.9(a) is also satisfied, for defendants' interests are materially adverse to those of Blackwell. Blackwell, the former client, is suing defendants, the current clients. This court cannot imagine a situation where clients' interests could be more "materially adverse."

### c. Blackwell did not Consent

■ RPC Rule 1.9(a) excuses conflicts of interests where the "client consents after full

---

3. The PMTA–ILA Pension Fund is a labor-management fund set up to provide pension benefits to longshoremen who are covered by the PMTA–ILA collective bargaining agreement. Local officers are permitted to sit as trustees on the fund when contributions are made by their employers. Blackwell's trusteeship was therefore funded by Local 1332. (Def.'s Mem.Opp'n Pls.' Mot.Prelim.Inj. at 5.)

4. Defense counsel argue that plaintiff Blackwell is not Freedman & Lorry's former client. Black-

well was represented by Freedman & Lorry only in his capacity as a trustee, while he is a plaintiff in this case solely in his capacity as Local 1332 president. (Defs.' Mem.Supp.Mot. for Reconsid. at 15–16.) Counsel's argument is flawed, however, because Blackwell was a trustee on the fund in his capacity as a union officer. (Defs.' Mem. Opp'n Pls.' Mot.Prelim.Inj. at 5.) The court shall not make a distinction where in reality there is none. Plaintiff Blackwell is Freedman & Lorry's former client.

disclosure of the circumstances and consultation." That requires both full disclosure by the attorney and consent by the client, neither of which occurred here.[5]

■ Gruber argues that, while he never actually consulted with Blackwell, he did speak with plaintiffs' counsel on several occasions about the conflict. Counsel suggests that the court should make no exception to the "general rule that a client acts through and is bound by its attorney." (Defs.' Mem.Supp.Mot.Reconsid. at 13.) The court disagrees. Rule 1.9(a) requires consultation with Blackwell himself. Certain rights are so basic to our judicial system that they cannot be easily waived. *See, e.g.,* Fed. R.Crim.P. 23 (waiver of right to criminal jury trial), *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (waiver of right to counsel in criminal case). For example, before permitting a criminal defendant to waive his right to a jury, the court must either speak face-to-face with the defendant or obtain a written waiver from the defendant to ensure that his decision is voluntarily and knowingly made. *United States v. Anderson,* 704 F.2d 117 (3d Cir.1983), *cert. denied,* 464 U.S. 838, 104 S.Ct. 129, 78 L.Ed.2d 125 (1983). Attorneys have similar obligations in this jurisdiction regarding conflicts of interest. Attorneys must consult with their clients about potential conflicts of interest, and must disclose the facts and circumstances surrounding the conflicts to such an extent that the clients appreciate the significance of the conflict. RPC Scope, Rule 1.9(a). An exchange of letters or phone calls between attorneys, as occurred in this case, is simply not sufficient to waive a client's right to conflict-free representation.

■ Gruber also argues that Blackwell knew of the conflict, and that his failure to object indicates his consent. Although it is true that conflicts of interest may be waived by silence, the silence must continue for an unreasonable amount of time. *See, e.g., Commonwealth Ins. Co.,* 808 F.Supp. at 1208. In this instance, plaintiffs were made aware of defendants' "unclean hands" defense only one business day before the preliminary injunction hearing.[6] A delay of one business day is certainly not unreasonable, and therefore Blackwell did not waive his objection to the conflict.

### 2. The Current Representation of Local 1332

■ Mathews, Marrinan and Gruber are currently the defense attorneys in a case in which Local 1332 is named as a defendant. *Maritime Terminal of Pa, Inc. v. ILA,* No. 95–CV–5775 (E.D.Pa.) ("*MTP*"). Local 1332 is therefore a current client of defense counsel,[7] and Mathews, Marrinan and Gruber all have a potential conflict of interest.

■ RPC Rule 1.7(a) applies to conflicts of interests with current clients:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

This conflict violates the Rule because: (a) Local 1332 and defendants are directly adverse to one another in this case, and (b)

---

**5.** Gruber has the burden to prove that Blackwell consented. *In re Corn Derivatives,* 748 F.2d at 162.

**6.** Defendants' filed their brief only one business day before the preliminary injunction hearing. Plaintiffs asserted in open court, and were not challenged by defendants, that they had no knowledge of the "unclean hands" defense before that time. It is that defense which makes Gruber's representation in this case so objectionable.

**7.** Mathews and Marrinan argue that Local 1332 is not their client in *MTP* because they were

admitted *pro hac vice* as counsel only for the ILA and its president. (Defs.' Mem.Supp.Mot.Reconsid. at 4, Ex. 12.) Counsel admit to answering the *MTP* complaint on behalf of Local 1332, but they allegedly did so as a favor, free of charge. (Defs.' Mem.Supp.Mot.Reconsid.Ex. 7, ¶ 14.) However, counsel's argument fails because "client" is defined broadly in the RPC. RPC, Scope. *See United States v. Costanzo,* 625 F.2d 465, 468 (3d Cir.1980) ("The attorney-client relationship is not dependent on the payment of a fee nor upon execution of a formal contract.") Defense counsel performed legal services for Local 1332, so Local 1332 is a client.

plaintiffs did not knowingly consent to the conflict.

### a. The Clients are Directly Adverse

RPC Rule 1.7(a) forbids an attorney from representing a client when the representation is "directly adverse" to another client. In this case, counsel are defending one client against claims brought by another client. This is the most direct of conflicts and therefore satisfies the "directly adverse" requirement.

### b. Plaintiffs did Not Consent

Once again, had defense counsel obtained plaintiffs' informed consent, this conflict might not be problematic under the RPC.[8] However, as stated above, this court was presented with no evidence that defense counsel consulted with, or obtained consent from, plaintiffs regarding this conflict.

■ Defense counsel argue that plaintiffs consented to the conflict because plaintiffs were aware of it when they agreed to be represented by Mathews, Marrinan and Gruber in *MTP*. (Defs.' Mem.Supp.Mot.Reconsid. at 13.) However, the RPC's "consent" requirement calls for more than mere "awareness" of a possible conflict of interest. Actual consultation is required. *See* RPC Terminology ("Consultation" requires "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question."); *International Business Machines Corp. v. Levin,* 579 F.2d 271, 282 (3d Cir.1978) ("Clearly, full and effective disclosure of all the relevant facts must be made and brought home to the prospective client.").

### B. The "Hot Potato" Rule

■ Defense counsel offered to withdraw from the other cases in order to cure the conflicts of interest in this case. However, an attorney may not drop one client like a "hot potato" in order to avoid a conflict with another, more remunerative client. *See, e.g., Stratagem Dev. Corp. v. Heron Int'l N.V.,* 756 F.Supp. 789, 794 (S.D.N.Y.1991); *Harte*

*Biltmore Ltd. v. First Pa. Bank,* 655 F.Supp. 419, 421 (S.D.Fla.1987); *Picker Int'l, Inc. v. Varian Assoc., Inc.,* 670 F.Supp. 1363, 1365–66 (N.D.Ohio 1987), *aff'd,* 869 F.2d 578 (Fed. Cir.1989). Such behavior is unethical as it violates attorneys' duty of loyalty. *Harte Biltmore Ltd.,* 655 F.Supp. at 421.

■ Although the Third Circuit has never specifically adopted the "hot potato" rule, it is clear that attorneys before this court have a strong duty of loyalty. RPC Rules 1.7, 1.9. Therefore, the "hot potato" rule shall apply in this case. Defense counsel may not drop Local 1332 and Blackwell as clients in order to preserve their representation of the ILA.

### C. Disqualification is Appropriate in This Case

■ The court recognizes that disqualification is a severe penalty at this late stage in the proceedings. The court must therefore apply a balancing test in order to decide whether defense counsel should be disqualified. *See In re Corn Derivatives Antitrust Litig.,* 748 F.2d 157, 162 (3d Cir.1984), *cert. denied sub nom. Cochrane & Bresnahan v. Plaintiff Class Representatives,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1203 (E.D.Pa. 1992). The factors relevant to the court's determination include (i) plaintiffs' interest in attorney loyalty, (ii) defendants' interest in retaining their chosen counsel, (iii) the risk of prejudice to defendants, and (iv) the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system. *In re Corn Derivatives,* 748 F.2d at 162; *Commonwealth Ins. Co.,* 808 F.Supp. at 1203.

■ In this case, the conflicts of interest are simply too severe to allow the defense team to remain on the case, despite counsel's assurances that the conflicts will in no way interfere with their professional judgment. *See Akerly v. Red Barn Sys., Inc.,* 551 F.2d 539, 544 (3rd Cir.1977) (holding that the

---

8. The court is assuming for the purposes of this discussion that RPC Rule 1.7(a)(1) is satisfied, i.e. that defense counsel reasonably believed that this conflict would not adversely affect their relationship with Local 1332.

court must avoid "the appearance as well as the actuality of professional impropriety."). Consideration of the four factors weighs in favor of disqualification. The court is especially concerned with maintaining public confidence in the judicial system. Defense counsel therefore must withdraw from this case.

## III. CONCLUSION

For the foregoing reasons, Gruber, Marrinan and Mathews shall withdraw as counsel for defense in accordance with the court's November 27, 1995 oral order.