**DATA GENERAL CORPORATION and Data General Systems, Inc., Plaintiffs,**

v.

**GRUMMAN SYSTEMS SUPPORT CORPORATION, Defendants.**

Civ. A. No. 88–0033–S.

United States District Court, D. Massachusetts.

Oct. 4, 1991.

Robert S. Frank, Jr., Choate, Hall & Stewart, Boston, Mass., for plaintiffs.

Gary Benton, Coudert Bros., San Francisco, Cal., for defendants.

## ORDER ON PLAINTIFFS' MOTION TO COMPEL DISCOVERY (NO. 409)

JOYCE LONDON ALEXANDER, United States Magistrate Judge.

Plaintiff Data General moves this Court to order defendant Grumman to answer interrogatories concerning the contents of a document Grumman produced pursuant to a discovery request more than two years ago. Grumman now claims that the document in question is privileged as work product and asks this Court to order Data General to return it.

### FACTUAL BACKGROUND

This is a copyright infringement action based on Data General's claim that defendant Grumman, without permission, used and copied its MV/ADEX diagnostic software to service and maintain computers operated by Grumman's customers. Grumman's defense is that it had a right to use the MV/ADEX software under a 1976 contract between Data General and Grumman's predecessor in interest. Grumman has also asserted a counterclaim under the Robinson–Patman Act, alleging unlawful

price discrimination against Grumman with respect to spare parts.

In December 1988, this Court issued a preliminary injunction enjoining Grumman from possessing, using and copying MV/ADEX diagnostic software. Discovery is ongoing. The discovery issues now before this Court relate to a document referred to as "Taylor Exhibit 5." Taylor Exhibit 5 is an extensive summary of revenues for maintenance and repair of Data General MV computers, prepared by Grumman's in-house counsel in anticipation of this lawsuit.

Grumman inadvertently produced this document through discovery to Data General on or about July 10, 1989. Grumman now claims that the document is the work product of its attorney and requests the return of it. Data General has requested that the Court order the defendant Grumman to answer interrogatories concerning the preparation and accuracy or extent of error of the information in Taylor Exhibit 5.[1]

ANALYSIS

Non-privileged relevant documents are subject to discovery under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 26(b)(1). Documents are immune from discovery, however, if they are "work product." Fed.R.Civ.P. 26(b)(3). Data General contends that Taylor Exhibit 5 is merely a compilation of non-privileged financial information and does not qualify for work product immunity.

Rule 26(b)(3) provides qualified immunity to "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative...." Fed.R.Civ.P. 26(b)(3). To obtain discovery of such materials, a party must demonstrate "substantial need" and "undue hard-

ship." *Id.* Even where a party makes such a showing, however, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

■ The rule, thus, contemplates two types of work product with different levels of immunity—"ordinary" work product with the "substantial need" standard and "opinion" work product with the higher level of immunity. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014–15 (1st Cir.1988). The Supreme Court has commented upon the two levels, noting a special need to protect an attorney's mental impressions and legal theories, but also noting that the work product doctrine provides some protection to "facts ... hidden in an attorney's file" that are "essential to the preparation of one's case...." *Upjohn Co. v. United States*, 449 U.S. 383, 399–400, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981) (quoting *Hickman v. Taylor*, 329 U.S. 495, 514, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947)). In elaborating upon this distinction between ordinary work product and opinion work product, the Court of Appeals for the First Circuit has lent implicit support to protecting statistical compilations produced at the behest of an attorney in preparation for litigation under the rubric ordinary work product. *See San Juan Dupont Plaza*, 859 F.2d at 1014–15 (discussing *Upjohn*); *see also In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 520 (N.D.Ill.1990) (" 'Factual' work product ... must be produced upon a showing by plaintiffs that they need the materials to prepare their case and have been unable without undue hardship to obtain them by other means") (citing Fed. R.Civ.P. 26(b)(3)). Thus, the factual nature

---

**1.** The interrogatories at issue are as follows:
13. Identify:
  (a) each person who prepared or participated in the preparation of Taylor ex. 5 ...; and
  (b) the source or sources from which the information stated in Taylor Ex. 5 was obtained.
14. Is the information stated in Taylor Ex. 5 accurate?

15. If your answer to Interrogatory 14 is not in the unqualified affirmative plese [sic] state:
  (a) the nature and amount of each error in the data presented in Taylor Ex. 5 and;
  (b) the means by which you identified each such error.

of Taylor Exhibit 5 will not, in and of itself, exclude the possibility of work product immunity.

■ For a document to have work product immunity, " '[t]he material in question must: 1) be a document or tangible thing, 2) which was prepared in anticipation of litigation, and 3) was prepared by or for a party, or for its representative.' " *Fairbanks v. American Can Co.*, 110 F.R.D. 685, 687 (D.Mass.1986) (quoting *Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16, 41 (S.D.N.Y.1984)). Grumman did not prepare Taylor Exhibit 5 "in the ordinary course of business ... or for other non-litigation purposes." *Id.* (quoting *APL Corporation v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 17 (D.Md.1980)). Rather, Grumman prepared the document at the behest of in-house counsel in anticipation of this litigation. *See id.* at 688 (holding salvage reports prepared by a worker's compensation carrier to be work product); *see also Bondy v. Brophy*, 124 F.R.D. 517, 518 (D.Mass. 1989) (finding work product immunity with regard to interrogatories "seek[ing] information obtained by an investigator hired by the plaintiff, including identities of persons contacted and copies of any and all written reports"). This Court, thus, finds that Taylor Exhibit 5 falls within the ambit of work product immunity.

■ This Court, nevertheless, is convinced by Data General's contention that Grumman's disclosure of the document, nearly two years ago, effected a waiver of work product immunity. In addressing this issue, Judge Collings has found that the inadvertent release of documents by counsel waives both the attorney-client privilege and work product immunity. *Prudential Ins. Co. v. Turner & Newall, P.L.C.*, 137 F.R.D. 178 (D.Mass.1991) (a party has an affirmative duty to protect documents it considers to be its work product); *International Digital Systems Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445 (D.Mass.1988) (unintentional disclosure waived attorney-client privilege). Grumman argues that inadvertent release should not effect a waiver, and offers cases from other districts that so hold under the attorney-client privilege and under work product immunity. *See Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 21 (D.Neb.1985); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105–06 (S.D.N.Y.1985); *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 954 (N.D.Ill.1982).

The Judge Skinner enunciated the standard for waiver of work product immunity:

(1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege would trench on any policy elements inherent in the privilege.

*In re Atlantic Fin. Management Sec. Litig.*, 121 F.R.D. 141, 145 (D.Mass.1988). Since the policy behind work product immunity is to bolster the adversarial system, disclosure of a document to an adversary is fundamentally inconsistent with this policy. *Id.; Republic of Philippines v. Westinghouse Elec. Corp.*, 132 F.R.D. 384, 390 (D.N.J.1990) ("Since the work-product privilege doctrine is based on maintaining a healthy adversarial system, ... once the privilege is disclosed to any adversary the privilege is destroyed"). Thus, the central questions are whether the second prong of this test requires waivers to be intentional and whether an unintentional waiver would be inconsistent with the policies behind work product immunity, pursuant to the third prong.

As Judge Collings has noted, the cases—most of which are under either the attorney-client privilege exclusively or the attorney-client privilege along with work product immunity—follow three paths: (1) a "strict accountability" test, whereby any disclosure constitutes a waiver; (2) a rule that "non-intentional disclosure is never a waiver because for a waiver of a protection to occur, the party must have intentionally given up the protection;" and (3) an intermediate approach finding a waiver "based

upon whether the precautions taken by a party to insure that protected material is not produced were reasonable." *Prudential Insurance Company*, 137 F.R.D. at 182 (comparing *International Digital Systems Corp.*, 120 F.R.D. at 445 with *Helman v. Murry's Steaks*, 728 F.Supp. 1099 (D.Del.1990); *Kansas–Nebraska Natural Gas v. Marathon Oil Co.*, 109 F.R.D. 12 (D.Neb.1983); *Connecticut Mut. Life Ins. Co. v. Shields*, 18 F.R.D. 448 (S.D.N.Y. 1955) and with *Bud Antle v. Grow–Tech*, 131 F.R.D. 179 (N.D.Cal.1990); *Parkway Gallery v. Kittinger/Pennsylvania House Group*, 116 F.R.D. 46 (M.D.N.C.1987); *Liggett Group v. Brown & Williamson Tobacco Group*, 116 F.R.D. 205 (M.D.N.C. 1986); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323 (N.D.Cal.1985); *Lois Sportswear*, 104 F.R.D. at 103)). Grumman criticizes the "strict accountability" test adopted by Judge Collings. *See id.*; *International Digital Systems*, 120 F.R.D. at 445. This Court, however, finds that whatever criticisms may be valid against an unintentional waiver of the attorney-client privilege are not valid with regard to work product immunity.

Much of the reasoning of these cases derives from policies underlying the attorney-client privilege, and not work product immunity, although there is a tendency to treat the two as indistinguishable. The cases under the attorney-client privilege stress that since the privilege belongs to the client and not the attorney, finding a waiver when counsel inadvertently discloses documents would chill clients' trust in the confidentiality of their communications, thus, undermining confidence in the legal system. *See, e.g., Helman*, 728 F.Supp. at 1104 ("The holder of the privilege is the client. It would fly in the face of the essential purpose of the attorney/client privilege to allow a truly inadvertent disclosure of a privileged communication by counsel to waive the client's privilege.") (citations omitted).

One case draws support for this rationale by citing Rule 503(a)(4) of the Proposed Rules of Federal Evidence, which "were approved by the Supreme Court and are accepted as a restatement of the law applied in the federal courts." *Lois Sportswear*, 104 F.R.D. at 106 (citing *U.S. v. Mackey*, 405 F.Supp. 854, 857–58 (E.D.N.Y.1975)). Because Rule 503(a)(4) deems a communication to be confidential only if it is "not *intended* to be disclosed to third persons," *Lois Sportswear* reasons that the rule rejects the notion of unintentional waiver of the attorney-client privilege as being inconsistent with this intent-based conception of confidentiality. *Id.* at 105–06 (quoting Proposed Fed.R.Evid. 503(a)(4) (emphasis added)).[2] The Advisory Committee's Note, however, raises some doubt about this interpretation: "The intent is inferable from the circumstances. Unless intent to disclose is apparent, communication is confidential. *Taking or failing to take precautions may be considered as bearing on intent.*" Proposed Fed.R.Evid. 503(a) advisory committee's note (emphasis added).

■ A more serious flaw, however, derives from the fact that this proposed rule applies only to the attorney-client privilege, and yet the court in *Lois Sportswear* invoked it to cover work product immunity. While the two doctrines are similar in many respects, the unique policies behind work product immunity have a unique bearing upon the waiver determination. *Cf. United States v. Gulf Oil Corp.*, 760 F.2d 292, 295–96 (Temp.Emer.Ct.App.1985) (holding that, unlike under the attorney-client privilege with its focus on confidentiality of relationship, work product immunity is based on confidentiality only as it bears on the adversary system, thus, disclosure to third parties is not incompatible with work product immunity, and noting, "The standard for determining whether a waiver has occurred varies, however, depending on

**2.** Rule 503(a)(4) provides:
A communication is 'confidential' if not *intended* to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
Proposed Fed.R.Evid. 503(a)(4) (emphasis added).

which privilege is involved"); [3] *accord Carter v. Gibbs*, 909 F.2d 1450 (Fed.Cir.1990). Perhaps the most important difference is that, unlike the attorney-client privilege, "[w]ork product is the privilege of the attorney and not of the client, and is based on the attorney's right to enjoy privacy in the course of preparation of his suit." *Anderson v. Torrington Co.*, 120 F.R.D. 82, 86 (N.D.Ind.1987).[4]

The Southern District of New York, in a case involving circumstances analogous to inadvertent disclosure of documents, noted that, while the attorney-client privilege was not the attorney's to waive, "work product may give way ... because it is the attorney's material, not the client's receiving protection." *Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y.1990) (citations omitted). In *Carte Blanche*, the attorney had waived work product immunity by failing to comply with a local rule of civil procedure requiring specification of the nature of any privilege invoked to protect documents. In this situation, which is quite similar to the inadvertent disclosure of documents, the court found a waiver. *Id.*

■ The "reasonable basis" for believing the confidentiality prong of Judge Skin-

ner's test for finding waiver of work product immunity should not limit waiver to intentional disclosures, since work product immunity belongs to the attorney. At the least, the middle tier approach to waiver, which allows for unintentional waiver, is consistent with Judge Skinner's test. For instance, in *Liggett Group*, the court inquired into whether counsel "undertook reasonable precautions to prevent inadvertent disclosure" of documents protected by work product immunity. *Liggett*, 116 F.R.D. at 208.[5]

Because the policy concerns underlying work product immunity relate to safeguarding the integrity of the adversarial process and not the attorney-client relationship, unintentional waiver of this immunity would be consistent with the third prong of Judge Skinner's test, allowing waiver if it would not entrench on policies underlying the immunity. It is consistent with the adversarial process that attorney's be on guard to prevent disclosure of confidential documents. Indeed, where the case involves "ordinary" or "factual" work product, rather than "opinion" work product, the need for protection is substantially reduced. *Cf. In re Sealed Case*, 676 F.2d

---

**3.** The court in *Gulf Oil* declared, however, that unintentional waiver is available under both privileges. *Id.* at 295.

**4.** In light of this distinction, the most vital policies that gravitate against unintentional waiver by counsel under the attorney-client privilege give way under work product immunity. For instance, one case implicitly invoked quasi-due process concerns in refusing to allow unintentional waiver. *Mendenhall*, 531 F.Supp. at 954–55. That court invoked the same standard of waiver that applies to the Sixth Amendment right to counsel. *Id.* at n. 9 (citing *United States ex rel. Ross v. Franzen*, 668 F.2d 933, 941 (7th Cir.1982) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938))). The Supreme Court, however, premised the *Zerbst* standard upon a presumption against finding a waiver of fundamental rights. *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. 1461. Whatever penumbra of due process may make this standard appropriate in the context of maintaining the confidentiality and trust of the attorney-client relationship does not extend to work product immunity, which is a protection afforded to the attorney in order to bolster the adversarial process. The *Mendenhall* court notes: "if we are serious about the attorney-

client privilege and its relation to the *client's* welfare, we should require more than such negligence by *counsel* before the client can be deemed to have given up the privilege." *Mendenhall*, 531 F.Supp. at 955 (emphasis in original) (citation omitted).

**5.** Other cases under the middle tier approach concentrate on other factors relating to steps taken after the disclosure to effect return of documents. *Bud Antle*, 131 F.R.D. at 183; *Parkway Gallery*, 116 F.R.D. at 50; *Hartford Fire Ins.*, 109 F.R.D. at 332. Without expressing any opinion on the relevance of these factors to more stringent protections that may be demanded by the special policies underlying the attorney-client privilege, this Court finds such factors not relevant to waiver of work product immunity. Only steps taken before documents cross the adversarial line between parties should be entitled to any weight in light of the policy behind work product immunity of providing just enough protection to safeguard the adversarial process. After documents have been disclosed, counsel has already let down its adversarial guard and must suffer the consequences.

561

793, 812 n. 72 (D.C.Cir.1982) (noting a lower standard of implied waiver for "factual" work product than for attorney-client privilege).

 Thus, the inadvertent disclosure of Taylor Exhibit 5 is a clear-cut case of waiver of work product immunity. Grumman's counsel marked the document "CONFIDENTIAL" and "CONFIDENTIAL—TRIAL COUNSEL ONLY," pursuant to a protective order in place between the parties. Data General submitted, and this Court agrees, that Grumman knew or should have known the contents of the document that it examined and marked before relinquishing it to opposing counsel. Consistent with the adversarial process, merely marking the documents in such a manner does not constitute the requisite guard required to protect work product. This conclusion is even more compelling in light of the fact that Taylor Exhibit 5 is "factual" work product and, thus, subject to the lower tier of work product protection.

Grumman argues that this case is different, because the interrogatories seek additional information. This Court disagrees. The interrogatories merely ask about the preparation of and the accuracy or extent of error of what this Court determines to be unprivileged information. *Cf. In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir.1984) ("Nor is the loss of the [attorney-client] privilege confined to 'the particular words used to express the communication's content' but extends 'to the substance of a communication,' since the disclosure of "any significant part' of a communication waives the privilege' and requires the attorney to disclose 'the details underlying the data which was to be published.'") (quoting *United States v. Cote,* 456 F.2d 142, 145 (8th Cir.1972)). In other words, the interrogatories seek information about matter (Taylor Exhibit 5) that this Court has determined to be non-privileged and discoverable. Rule 26(b) contemplates discovery with a broad scope. Accordingly, this Court finds that Data General does not have to return Taylor Exhibit

5 and that Grumman must answer interrogatories 13, 14 and 15.

SO ORDERED.