In re **HECHINGER INVESTMENT COMPANY OF DELAWARE**, Debtor.

**Official Committee of Unsecured Creditors of Hechinger Investment Company of Delaware, Inc., on behalf of Hechinger Investment Company of Delaware, Inc., et al., Plaintiffs,**

v.

**Fleet Retail Finance Group, et al., Defendants.**

No. CIV.A.00–840 KAJ.

United States District Court, D. Delaware.

Dec. 10, 2003.

Mark David Collins, Esq., Richards, Layton & Finger, Wilmington, DE, for debtor Hechinger Investment Company of Delaware.

Mark Minuti, Esq., Saul Ewing LLP, Wilmington, DE, for plaintiff the Official Committee of Unsecured Creditors of Hechinger Investment Company of Delaware,

Inc., et al., on behalf of Hechinger Investment Company of Delaware, Inc.

Teresa K.D. Currier, Esq., Klett, Rooney, Lieber & Schorling, Wilmington, DE, for defendants Fleet Retail and Back Bay Capital.

Stephen M. Miller, Esq., Morris, James, Hitchens & Williams, Wilmington, DE, for defendant General Electric Corporation.

Anthony W. Clark, Esq., Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, for defendant K–Mart Corporation, Inc.

Regina A. Iorii, Esq., Ashby & Geddes, Wilmington, DE, for defendants Leonard Green & Partners, L.P. and Green Equity Investors II, L.P.

Kenneth J. Nachbar, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for defendants John W. Hechinger, Jr., John W. Hechinger, S. Ross Hechinger, W. Clark McClelland, Kenneth J. Cort, Ann D. Jordan, Melvin A. Wilmore, Alan J. Zakon, Robert S. Parker, Sally Rudoy, Nancy Lowe, June Hechinger, Jarsan Associates and June L.P.

John Leonard Reed, Esq., Duane Morris LLP, Wilmington, DE, for defendant Chase Manhattan Bank.

Kevin Joseph Mangan, Esq., Monzack & Monaco, P.A., Wilmington, DE, for movant Georgia Pacific.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Presently before me are a Motion for Reargument (Docket Item ["D.I."] 431) filed by defendants John W. Hechinger, Jr., John W. Hechinger, S. Ross Hechinger, W. Clark McClelland, Kenneth J. Cort, Ann D. Jordan, Melvin A. Wilmore, Alan J. Zakon, and Robert S. Parker (collectively, "the Individual Defendants") and a Motion for Reconsideration (D.I.434) filed by defendant Fleet Retail Finance, Inc. ("Fleet").[1] Also before me is a Motion for a Protective Order (D.I.425) filed by the Official Committee of Unsecured Creditors of Hechinger Investment Company of Delaware, Inc., et al., on behalf of Hechinger Investment Company of Delaware, Inc. ("Hechinger"). For the reasons that follow, the Individual Defendants' Motion will be denied, Fleet's Motion will be granted, and Hechinger's Motion for a Protective Order will be granted.

## II. BACKGROUND

Because I write mainly for the benefit of the parties, and given the lengthy discovery period in this litigation, I will recount only the facts relevant to the instant Motions.

During the course of discovery, Hechinger subpoenaed numerous third parties to produce documents. (D.I. 444 ¶ 2.) Sometime in 2001, defendants complained that Hechinger was not producing to them with sufficient speed the documents Hechinger had received in discovery from third parties. (D.I. 444 ¶ 4.) Thereafter, Hechinger instituted a procedure whereby its paralegals, immediately upon receipt of a third-party's document production, would duplicate the documents and produce them to defendants. (*Id.*)

Hechinger issued a subpoena to the consulting firm of Wasserstein Perella & Company ("Wasserstein") for documents

---

1. Defendants Leonard Green & Partners, L.P. and Green Equity Investors II, L.P. (collectively, "the LGP Defendants") filed a Joinder in the Individual Defendants' Motion for Reargument on June 12, 2003. (D.I.449.)

The discussion herein of the Individual Defendants' Motion should be understood to also address the merits of the LGP Defendants' Joinder in that Motion.

regarding Hechinger's pre-bankruptcy financial condition and the 1997 merger of K–Mart Corporation's ("K–Mart") Builders Square business with Hechinger. (D.I. 334 at 2.) Hechinger's counsel was, it seems, under the mistaken impression that Wasserstein had provided financial analysis services to Hechinger prior to its filing for bankruptcy. (D.I. 444 ¶ 2.) That was not the case. Wasserstein had actually been retained by Wilkie, Farr & Gallagher LLP ("WFG"), Hechinger's post-bankruptcy counsel, to analyze potential litigation against K–Mart. (D.I. 428 at 2.) In response to Hechinger's subpoena, and without the knowledge of Hechinger's counsel, Wasserstein produced to Hechinger approximately 3700 pages of documents, including privileged and confidential work product it prepared for WFG (hereinafter "the Wasserstein Documents"). (D.I. 444 ¶ 3.) Hechinger then produced all of the Wasserstein Documents to defendants (*id.* ¶ 4) on August 23, 2001 (D.I. 438 at 12).[2]

In a letter dated February 4, 2002, Hechinger asked defendants to return the Wasserstein Documents, claiming that the documents were privileged and inadvertently produced. (D.I.439, Exh. A.) However, Hechinger withdrew that request, without explanation, on March 1, 2002. (*Id.,* Exh. B.) On November 8, 2002, Fleet filed a motion to compel the production of additional documents related to the Wasserstein Documents, claiming that Hechinger's production of the Wasserstein Documents constituted a waiver of any privilege as to the Wasserstein Documents and all related documents.[3] (D.I.325.) Hechinger took the position that, because the production was inadvertent, any waiver of privilege extended only to the Wasserstein Documents. (D.I.334.) On April 17, 2003, defendants issued three testimonial and documentary subpoenas to individuals who prepared the Wasserstein Documents. (D.I.427, Exhs.A–C.) Hechinger filed a Motion for a Protective Order on May 6, 2003, seeking to quash these subpoenas.[4] (D.I.425.)

On May 7, 2003, I issued an order denying Fleet's motion to compel production of documents relating to the Wasserstein Documents. (D.I.428.) I ordered Fleet to return all of the Wasserstein Documents to Hechinger, stating that Fleet had "failed to demonstrate that the inadvertently disclosed attorney work product documents at issue were used by Hechinger unfairly to the disadvantage of Fleet." (*Id.* at 2 (citing *Thorn EMI North Am. Inc. v. Micron Tech. Inc.,* 837 F.Supp. 616, 621 (D.Del.1993).))

On May 16, 2003, the Individual Defendants filed their Motion for Reargument, stating that Hechinger had not sustained its burden of proving that its production of the Wasserstein Documents was inadvertent. (D.I. 431 at 2.) Fleet then filed a Motion for Reconsideration on May 20, 2003, pertaining to the portion of the May 7, 2003 Order which required defendants to return the Wasserstein Documents to Hechinger.[5] (D.I.434.) Hechinger re-

2. None of this, of course, answers the question of why Hechinger was subpoenaing its own consultants. While there may be a logical answer to that question, I am not aware of it.

3. The Individual Defendants joined in Fleet's motion to compel on December 6, 2002. (D.I. 431 at 2 n. 1; D.I. 432, Exh. B.)

4. In the meantime, defendants state, and Hechinger does not dispute, that certain Wasserstein Documents have been used routinely as deposition exhibits. (D.I. 438 at 13.)

5. The parties have submitted a proposed Order on Consent to resolve Fleet's Motion for Reconsideration. (D.I.574.)

sponded to these Motions on June 6, 2003, by representing that it did not "oppose reconsideration of that part of the Order directing the return of the [Wasserstein Documents]" but asking that the Motion for Reargument be denied to the extent that the Individual Defendants were seeking "additional production of privileged documents." (D.I. 443 at 2.)

## III. STANDARD OF REVIEW

■ Motions for reconsideration or reargument should be granted only "sparingly." *Karr v. Castle*, 768 F.Supp. 1087, 1090 (D.Del.1991). In this district, motions for reconsideration are granted only if it appears that the court has patently misunderstood a party, has made a decision outside of the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. *Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del.1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)). Further, a district court should grant a motion for reconsideration which alters, amends, or offers relief from a judgment when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice. *See Max's Seafood Café by Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

Federal Rule of Civil Procedure 26(c) provides that, "[u]pon motion by a party or by the person from whom discovery is sought . . . and for good cause shown . . . on matters relating to a deposition, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppres-

sion, or undue burden or expense, including . . . that the disclosure or discovery not be had." Fed.R.Civ.P. 26(c)(1) (2003).

## IV. DISCUSSION

### A. Reconsideration of the May 7, 2003 Order is Appropriate

■ Reconsideration of my May 7, 2003 Order is appropriate because, in holding that defendants were required to return the Wasserstein Documents to Hechinger, I decided an issue that was "outside of the adversarial issues presented by the parties." *Brambles USA*, 735 F.Supp. at 1240. Further, reconsideration has allowed the development of the record regarding Hechinger's production of the Wasserstein Documents. *See Max's Seafood*, 176 F.3d at 677.

### B. Hechinger's Inadvertent Production of the Wasserstein Documents Does Not Constitute a Broad Subject Matter Waiver

■ In their papers, both parties have argued that the Wasserstein Documents are generally "privileged." However, it is important to clarify whether the attorney-client privilege, work product doctrine, or both, apply to the Wasserstein Documents. *See Rhodia Chimie v. PPG Industries, Inc.*, 218 F.R.D. 416, 421 (D.Del.2003) ("The attorney-client privilege and the work product doctrine are based on different public policies, protect different though frequently complementary interests, and are subject to different analyses when considering the propriety of a finding of waiver.") (citation omitted). The Wasserstein Documents were prepared by Wasserstein, at WFG's request, in anticipation of possible litigation with K–Mart (D.I. 334 at 2), and therefore fall squarely within the pa-

rameters of work product protection.[6] *See Westinghouse Elec. Corp. v. Rep. Of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)) ("[T]he work product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. . . ."). Therefore, the issue here is whether Hechinger, by producing the Wasserstein Documents to defendants, waived work product protection as to the entire subject matter of the Wasserstein Documents or to just the documents themselves.

In framing their arguments, the parties rely on case law that discusses, almost exclusively, the scope of waiver of the attorney-client privilege when a party inadvertently produces documents during discovery. Fleet states that "[t]he *Westinghouse* case held that the waiver rules are the same for both attorney-client privileged and work product protected documents." (D.I. 325 at 2 n. 2.) I disagree. In *Westinghouse*, Westinghouse Electric Corporation voluntarily disclosed information protected by the attorney-client privilege and the work product doctrine in order to cooperate with the government. *Westinghouse Elec. Corp. v. Rep. of the Philippines*, 951 F.2d 1414, 1417 (3d Cir.1991). The Third Circuit's precise holding in *Westinghouse* was that, when "a party discloses a portion of otherwise privileged materials while with-

holding the rest, the privilege is waived only as to those communications actually disclosed," unless this "partial waiver would be unfair to the party's adversary." *Id.* at 1426 n. 13. Only this "fairness doctrine" was held to apply equally in the context of the attorney-client privilege and work product protection. *Id.* at 1430. Thus, Fleet has interpreted the *Westinghouse* decision too broadly.

■ Though there may be a tendency on occasion for courts to treat the attorney-client privilege and work product doctrine as indistinguishable, *Data General Corp. v. Grumman Sys. Support Corp.*, 139 F.R.D. 556, 560 (D.Mass.1991), it is not necessary to apply the same waiver rules to both attorney-client privilege and work product protection, since each serves a distinct purpose, *Westinghouse*, 951 F.2d at 1427. The attorney-client privilege protects the confidentiality of communications between clients and their attorneys, *id.* at 1428, and the holder of the attorney-client privilege is the client, *Helman v. Murry's Steaks*, 728 F.Supp. 1099, 1104 (D.Del. 1990). In contrast, the work product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. *Westinghouse*, 951 F.2d at 1428. Unlike the attorney-client privilege, "work product is the privilege of the attorney," *Data General*, 139 F.R.D. at 560 (citation omitted), and

---

**6.** I have previously held that the Wasserstein Documents are "attorney work product," and neither party has asked me to reconsider that part of my May 7, 2003 Order. (D.I. 428 at 2.) When Hechinger initially requested that defendants return the Wasserstein Documents in its February 4, 2002 letter, it asserted both the attorney-client privilege and the work product doctrine. (D.I.439, Exh. A.) Yet throughout their subsequent submissions to the court, Hechinger and defendants have

based their arguments on the assertion that the Wasserstein Documents are generally privileged, despite having ample opportunity to specify whether I should look to the attorney-client privilege, work product doctrine, or both. Therefore, I will proceed on the basis of my holding that the Wasserstein Documents are subject to the work product doctrine only, as neither party has argued that I should proceed otherwise.

thus the attorney is the one who may waive it.

██ Though Fleet relies on *Westinghouse* to support its arguments, that decision is inapposite, as it deals with the voluntary disclosure of attorney-client privileged and work product protected documents, and I remain persuaded that Hechinger's production of the Wasserstein Documents was inadvertent, in the sense that no informed decisionmaker meant for the production to take place. Quite simply, Hechinger did not intend to produce the Wasserstein Documents to defendants. *See Ciba–Geigy Corp. v. Sandoz Ltd.*, 916 F.Supp. 404, 412 (D.N.J.1995) (citing *Federal Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 482 (D.Va.1991)) ("every inadvertent disclosure is an unintentional disclosure"). It follows that Hechinger's document "screening process" was ineffective, otherwise the Wasserstein Documents would never have fallen into defendants' hands.[7] *See Int'l Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449 (D.Mass.1988) ("the precautions were inadequate because they were ineffective in preventing the disclosure" of privileged documents).

██ I will not comment further on Hechinger's conduct prior to the production of the Wasserstein Documents, as the proper focus "in the case of inadvertent or involuntary disclosures" is whether "the party asserting the work product doctrine...pursue[d] all reasonable means to restore the confidentiality of the materials and...prevent further disclosures within a reasonable period to continue to receive [work product] protection..." *In re Grand Jury (Impounded)*, 138 F.3d 978,

981 (3d Cir.1998). Hechinger did not ask defendants to return the Wasserstein Documents until February 4, 2002, approximately five months after they were produced. Then, on March 1, 2002, Hechinger abandoned its request altogether. Thus, because Hechinger inadvertently disclosed work product protected documents to its adversary, *Westinghouse*, 951 F.2d at 1428, and did not take any steps to restore their confidentiality, *In re Grand Jury*, 138 F.3d at 982, Hechinger has waived the work product protection with respect to the Wasserstein Documents.

The more difficult and more pertinent issue, of course, is whether defendants are entitled to broader discovery pertaining to the subject matter of the Wasserstein Documents. Courts have previously addressed the concept of subject matter waiver in the attorney-client privilege context. *See, e.g., Metzger v. City of Leawood*, 2000 WL 1909637 (D.Kan. Dec. 20, 2000); *In re Recombinant DNA Tech. Patent & Contract Lit.*, 850 F.Supp. 769 (S.D.Ind.1994); *Martin v. Valley Nat'l Bank of Arizona*, 1992 WL 196798 (S.D.N.Y. Aug.6, 1992); *Prudential Insurance Co. v. Turner & Newall, PLC*, 137 F.R.D. 178 (D.Mass.1991); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46 (M.D.N.C.1987). The issue of subject matter waiver in the context of the work product doctrine is less charted.

██ The work product doctrine, in general, allows a party to discover material prepared in anticipation of litigation or for trial only when the requesting party has shown a substantial need for the material and cannot obtain the material or

---

7. Had a paralegal or an attorney reviewed the Wasserstein Documents before they were duplicated and produced to defendants, the fact that they were confidential, attorney work product would have been apparent, as many of the pages are clearly marked as such. *(See, e.g.,* D.I. 352, Exhs. A, B and E.)

its equivalent elsewhere without incurring a substantial hardship. *See* Fed.R.Civ.P. 26(b)(3) (2003). The Third Circuit will not compel discovery of work product absent a showing of substantial need. *See Montgomery County v. Microvote Corp.,* 175 F.3d 296, 306 (3d Cir.1999) (Greenberg, J., concurring). Further, an attorney's work product should be accorded "almost absolute protection from discovery," because of "the adversary system's interest in maintaining the privacy of an attorney's thought processes . . . ." *Rhodia,* 218 F.R.D. at 420 (citing *Haines v. Liggett Group Inc.,* 975 F.2d 81, 94 (3d Cir.1992)). With these important legal principles in mind, and having already found that Hechinger has waived work product protection with respect to the Wasserstein Documents themselves, I am reluctant to further intrude upon the work product protection and extend that waiver to the entire subject matter encompassed by those documents.

When considering the scope of waiver of the attorney-client privilege, other courts have adhered to the following standard: "The general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure. . . . In a proper case of inadvertent disclosure, the waiver should cover only the specific document in issue." *Parkway Gallery Furniture,* 116 F.R.D. at 52 (citing *Standard Chartered Bank v. Ayala Int'l Holdings, Inc.,* 111 F.R.D. 76 (S.D.N.Y.1986); *First Wisconsin Mortgage v. First Wisconsin Corp.,* 86 F.R.D. 160, 173–74 (E.D.Wis.1980); *Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26, 45–46 (D.Md.1974)). This rule is applied "unless it is obvious a party is attempting to gain an advantage or make offensive or unfair use of the disclosure." *Id.; see also Marine Midland Realty,* 138 F.R.D. at 484; *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 132 F.R.D. 204, 208 (N.D.Ind.1990). As discussed *supra,* the Third Circuit has approved the application of a similar type of "fairness doctrine" in the context of partial, voluntary disclosure of work product protected documents. *See Westinghouse,* 951 F.2d at 1426 n. 13, 1430. There is no persuasive showing here that Hechinger is using the Wasserstein Documents unfairly as both a sword and a shield.[8] Thus, while there is no question that Hechinger opened the gate by inadvertently producing the Wasserstein Documents, defendants are not entitled to drive a bulldozer through it. I therefore find that Hechinger's waiver of work product protection is limited only to the Wasserstein Documents themselves.[9]

## C. Hechinger's Motion for a Protective Order

Because I find that Hechinger has not waived work product protection as to the

---

8. At oral argument, counsel for the Individual Defendants stated that one of plaintiff's experts, David Yurkerwich, used certain of the Wasserstein Documents in preparing his expert report. (D.I. 475 at 31:1–9.) Plaintiff represents that Mr. Yurkerwich prepared a rebuttal report responding to the opinions of Robert J. Rock, an expert retained by the Individual Defendants. (D.I. 481 at 1 n. 1.) In preparing his rebuttal, Mr. Yurkerwich was provided with the documents reviewed and relied upon by Mr. Rock, which happened to include some of the Wasserstein Documents. (*Id.*) Plaintiff also states that the Wasserstein Documents in question were previously introduced by the Individual Defendants in various depositions. (*Id.*) This is not persuasive evidence to demonstrate offensive use of the Wasserstein Documents by plaintiff.

9. Of course, should it become apparent that Hechinger is taking unfair advantage of the documents by using them offensively while shielding other information, the defendants are not foreclosed from bringing that to the court's attention.

broad subject matter of the Wasserstein Documents, Hechinger's Motion for a Protective Order (D.I.425) to quash the testimonial and documentary subpoenas for three individuals involved in the preparation of the Wasserstein Documents will be granted.

### D. Fleet and the Individual Defendants Are Not Required to Return the Wasserstein Documents to Hechinger

■ It is undisputed that, on March 1, 2002, Hechinger withdrew its initial request for return of the Wasserstein Documents. (D.I. 432, Exh. C; D.I. 443 at 1; D.I. 475 at 17:4–8.) The Wasserstein Documents will therefore remain in defendants' possession, and Fleet's Motion (D.I. 434) will be granted to that extent.